707 A.2d 1130

Mary RYAN, Appellee,

v.

WORKMAN'S COMPENSATION APPEAL BOARD (COMMUNITY HEALTH SERVICES).

Appeal of COMMUNITY HEALTH SERVICES.

Supreme Court of Pennsylvania.

Argued April 30, 1997.

Decided Feb. 26, 1998.

552

Anthony J. Bilotti, Broomall, Diane M. Matlesky, Philadelphia, for Community Home Health Svcs.

Timothy B. Kiser, Philadelphia, for Mary Ryan.

David S. Hawkins, for WCAB.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

■ This Court granted *allocatur* in this matter in order to address two issues. The first issue is whether a claimant who is involved in a work-related automobile accident and later suffers a psychological injury which is allegedly triggered by learning that she is being sued by the driver of the other vehicle in the accident should have her claim analyzed under the "physical/mental" or "mental/mental" burden of proof for purposes of determining eligibility to receive a reinstatement of workers' compensation benefits. The second issue is if such a claim should be analyzed under the physical/mental burden of proof, what standard of proof should be applied in "physical/mental" cases. Because we find that the claimant's psychological injury should have been analyzed under the "mental/mental" burden of proof, and since the claimant has failed to produce evidence that abnormal working conditions caused her psychological injury, we reverse the order of the Commonwealth Court reinstating the claimant's workers' compensation benefits.

The relevant facts to this appeal are that Mary Ryan ("Claimant") was employed as a visiting nurse by appellant, Community Health Services. On February 27, 1990, Claimant sustained a fractured right patella, a bruised arm and a chest injury from a work-related automobile accident.[1] As a result

---

1. Claimant recounted the accident in her testimony at a hearing before the workers' compensation judge assigned to this case. According to Claimant, she was driving southbound on Henry Avenue in Philadelphia and was proceeding through a green light when a car travelling in the northbound lane of Henry Avenue attempted to make a left turn

of the accident, Claimant began receiving workers' compensation benefits in the amount of $419 per week pursuant to a Notice of Compensation Payable executed on May 1, 1990. The Notice of Compensation Payable only acknowledged Claimant's physical injuries. On April 30, 1990, Claimant returned to her position as a visiting nurse with the same duties and the same salary as her pre-injury position. On May 14, 1990, Claimant executed a final receipt for workers' compensation benefits.

In the summer of 1991, Claimant asserts that she began experiencing depression when she learned that the driver of the other vehicle involved in the February 27, 1990 work-related automobile accident had filed a lawsuit against Claimant as a result of the severe head injuries the other driver suffered.[2] In December of 1991, Claimant sought psychological treatment after complaining of suffering from nightmares about the work-related accident.

On February 3, 1992, Claimant ceased working after she was discovered drinking on the job by one of her supervisors.[3] On March 1, 1992, Claimant overdosed on anti-depressant pills. This overdose resulted in Claimant being hospitalized for thirteen days.

On October 23, 1992, Claimant filed a petition for review seeking to amend her Notice of Compensation Payable so that it reflected that Claimant had also suffered a work-related mental disability as a result of the February 27, 1990 work-related physical injury. On that same day, Claimant also filed a petition for reinstatement of workers' compensation benefits as of February 2, 1992 (the day Claimant took a leave of absence). On November 12, 1992, appellant filed an answer

directly in front of her automobile. As a result, Claimant was unable to stop her automobile and it went into the front of the other driver's automobile. The other driver went through the windshield and was taken to the hospital for medical treatment.

2. Claimant had previously filed a lawsuit against the other driver for the injuries she suffered shortly after the work-related accident.

3. Claimant was initially placed on a personal leave of absence by appellant when she stopped working. Sometime thereafter, claimant's absence from work was reclassified as a medical leave of absence.

denying Claimant's allegations in both petitions and the matter was assigned to a Workers' Compensation Judge ("WCJ"). On February 2, 1993, Claimant returned to work as a visiting nurse. On February 22, 1993, Claimant filed a penalty petition because of appellant's contest to her two petitions and appellant's refusal to reinstate Claimant's workers' compensation benefits.

At the hearings before the WCJ, Claimant testified about the February 27, 1990 work-related accident and the mental injuries she had suffered as a result of the accident. Claimant testified that her depression was triggered by the lawsuit the other driver brought against her which described for the first time the extent of the injuries suffered by the other driver.[4] Claimant also presented two medical experts at the hearings before the WCJ. One of these experts, Bernard Sobel, M.D., a board certified psychiatrist, opined that Claimant suffered from dysthymic disorder, alcohol abuse and a possible personality disorder. However, Dr. Sobel was unable to opine with any degree of medical certainty the cause of Claimant's mental disorders. The other medical expert, Robert Toborowsky, M.D., a board certified psychiatrist, testified that Claimant first became upset when she learned that she was being sued by the other driver. Dr. Toborowsky, however, opined that Claimant suffered from a post-traumatic stress disorder which was causally related to the February 27, 1990 automobile accident.

Appellant presented the expert medical testimony of Timothy J. Michaels, M.D.. Dr. Michaels diagnosed Claimant with a history of alcohol abuse and alcohol dependence. Dr. Michaels, however, opined that there was no evidence of any psychiatric disability related to Claimant's work-related injury.

4. Claimant also testified about a non-work-related automobile accident she was involved with in January of 1993. While Claimant was not injured in the accident, Claimant alleges that this second accident caused her depression to worsen since it reminded her of the work-related accident.

The WCJ found Claimant and her two medical experts to be credible. The WCJ rejected the testimony of appellant's medical expert to the extent that it conflicted with that presented by Claimant. Based on these determinations, the WCJ granted Claimant's petition to amend the Notice of Compensation Payable to reflect that Claimant had sustained a psychological injury in the nature of depression from the February 27, 1990 work-related automobile accident. The WCJ also found that Claimant sustained a recurrence of this depression for the period from February 3, 1992 (the date Claimant stopped working) through February 2, 1993 (the date Claimant returned to work). Thus, the WCJ granted Claimant's petition for reinstatement of benefits. Moreover, the WCJ denied Claimant's penalty petition on the basis that appellant's contest of Claimant's two petitions was reasonable.[5]

Appellant then appealed to the Workmen's Compensation Appeal Board (the "Board"). The Board, without taking further evidence, reversed the decision of the WCJ. In particular, the Board found that the evidence did not support the WCJ's findings that Claimant's psychological injury was caused by the physical injuries of her work-related automobile accident. Instead, the Board found that the evidence showed that Claimant's psychological injury was caused by the psychological stimulus of learning that she was being sued by the other driver involved in the work-related accident. The Board also found that Claimant's psychological injury was not related to her employment and that there was only a tenuous causal relationship between the psychological injury and the accident. Thus, the Board concluded that Claimant actually suffered a psychic injury classified as a "mental/mental" injury. Since "mental/mental" workers' compensation claims require evidence of abnormal working conditions, and Claimant failed to produce such evidence, the Board determined that Claimant was not entitled to amend her Notice of Compensation Payable and denied her petition for reinstatement of benefits.

5. Claimant has never appealed the denial of her penalty petition. Thus, this matter is not before the Court.

The Commonwealth Court, in a published opinion, reversed the Board and reinstated the decision of the WCJ. In reaching this decision, the Commonwealth Court determined that the evidence showed that Claimant sustained her burden of proving that a physical, work-related stimulus in the form of the automobile accident caused Claimant to be disabled with a psychological injury in the form of post-traumatic stress disorder. This Court granted *allocatur* in order to determine the proper classification for Claimant's psychological injury and whether Claimant met that classification's burden of proof in order to have her workers' compensation benefits reinstated.

■ Appellate review of a workers' compensation order is limited to determining whether the lower tribunals committed a constitutional violation or an error of law and whether substantial evidence supports the necessary findings of fact. *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 31, 584 A.2d 301, 303 (1990). Moreover, following a termination of benefits, a claimant seeking reinstatement must establish a causal connection between her current condition and the prior work-related injury. *Pieper*, 526 Pa. at 31–32, 584 A.2d at 304. In order to meet this burden, a claimant must establish that her disability has increased or recurred after the date of the prior award, and that her condition has actually changed in some manner. *Id.*

Here, Claimant initially received workers' compensation benefits for the physical injuries she suffered in the work-related automobile accident. It was only when Claimant filed a petition for reinstatement of benefits upon learning she was being sued that Claimant first asserted her belief that she suffered from a work-related psychological injury. Since appellant never accepted liability for the alleged psychiatric injury as a result of it never having been asserted, Claimant attempted to revise the Notice of Compensation Payable so that it reflected that her work-related accident had caused her to suffer a psychological injury.

■ Disabilities caused by psychological/mental elements may be considered injuries which are compensable under the

Workers' Compensation Act if all the elements needed to establish such a claim are present. *Volterano v. Workmen's Compensation Appeal Board (Allied Corp.)*, 536 Pa. 335, 345, 639 A.2d 453, 457–58 (1994). For purposes of receiving workers' compensation benefits, the influence of the psychological element is divided into three discrete classifications: (1) the "mental/physical" injury where a psychological stimulus causes a physical injury;[6] (2) the "physical/mental" injury where a physical stimulus causes a psychic injury;[7] and, (3) the "mental/mental" injury where a psychological stimulus causes a psychic injury.[8] *Volterano, supra.*

Claimant, relying on the reasoning of the Commonwealth Court and the WCJ, asserts that she suffered a physical/mental injury since the evidence demonstrates that a work-related physical stimulus in the form of the automobile accident caused her to become disabled with a psychological/mental injury. Conversely, appellant argues that Claimant did not

6. Compensable mental/physical injuries are not at issue in this case. Examples of such injuries which are compensable include psychological stress at work causing a heart attack or angina. *Washington Food Specialties, Inc. v. Workmen's Compensation Appeal Board (Britko)*, 144 Pa. Commw. 226, 601 A.2d 439 (1991), *appeal denied*, 533 Pa. 603, 617 A.2d 1277 (1992) (heart attack); *Borough of Media v. Workmen's Compensation Appeal Board (Dorsey)*, 134 Pa. Commw. 573, 580 A.2d 431 (1990) (angina).

7. Examples of compensable physical/mental injuries include head injuries suffered from a fall at work causing an anxiety-related stammering problem, a foot injury in which the claimant experienced numbness causing emotional distress, and psychosomatic uncontrollable flapping of the wrist after it was injured when a glass shelf fell on it. *Chamberlain Mfg. Corp. v. Workmen's Compensation Appeal Board (Wolter)*, 46 Pa. Commw. 225, 405 A.2d 1375 (1979) (stammering problem); *Dill Products v. Workmen's Compensation Appeal Board (Cuff)*, 42 Pa. Commw. 563, 401 A.2d 409 (1979) (foot injury); *Workmen's Compensation Appeal Board v. F.W. Woolworth Co.*, 19 Pa. Commw. 413, 338 A.2d 784 (1975) (wrist flapping).

8. Examples of compensable mental/mental injuries include a claimant developing schizophrenia as a result of stress associated with being a police officer and a claimant suffering from a panic disorder caused by harassment from a supervisor. *Leo v. Workmen's Compensation Appeal Board (Borough of Charleroi)*, 114 Pa. Commw. 6, 537 A.2d 399 (1988) (schizophrenia); *McDonough v. Workmen's Compensation Appeal Board (Com., Dept. of Transportation)*, 80 Pa. Commw. 1, 470 A.2d 1099 (1984) (panic disorder).

meet her burden for reinstatement of benefits because her injury falls within the mental/mental classification and Claimant failed to produce evidence of abnormal working conditions. Our determination of which party is correct will depend upon an examination of the WCJ's factual findings and the supporting record.

■■■ Where, as here, the Board takes no additional evidence, an appellate court reviews the record in its entirety in order to determine whether the WCJ's factual findings are supported by substantial evidence. *Croll v. Workmen's Compensation Appeal Board (Dorr–Oliver, Inc.)*, 511 Pa. 79, 84, 511 A.2d 1311, 1313 (1986). "Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 292, 612 A.2d 434, 436 (1992). Moreover, the WCJ determines all issues of testimonial credibility and such determinations bind the parties on appeal unless made arbitrarily and capriciously. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 329, 652 A.2d 797, 800 (1995).

Here, the WCJ, in finding of fact number 5(c), found that Claimant began experiencing emotional problems and depression when she first learned that the other driver had filed a lawsuit against her as a result of serious head injuries suffered from the accident. This finding is clearly supported by Claimant's testimony before the WCJ.

In finding of fact number 8, the WCJ found as follows:

[T]he testimony of Dr. Robert W. Toborowsky [one of Claimant's two medical experts] is specifically accepted as credible and persuasive. Dr. Toborowsky's opinion which supported claimant's testimony establishes that the workrelated accident and Claimant's subsequent knowledge of the severe problems of the other driver was the triggering event of Claimant's condition and admits Claimant did experience a significant recovery after her treatment at the Westmeade Center. His testimony is accepted as fact.

This finding of fact is supported by substantial evidence to the extent that it finds that Claimant's own medical expert testified that the first time Claimant became emotionally upset was after learning that she had been sued because of the other driver's injuries. In his testimony, Dr. Toborowsky stated that he believed that it was Claimant's learning of the fact that she was being sued which triggered her psychological problems. Dr. Toborowsky also testified that he believed that the notification of the lawsuit and the injuries suffered by the other driver were factors which would lead to the increase in the likelihood of developing post-traumatic stress disorder and, in fact, led to Claimant thinking about the work-related accident.

We must conclude, however, that based upon a thorough review of the record, the portion of the WCJ's finding of fact number 8, that the work-related accident triggered Claimant's psychological problem, is not supported by substantial evidence. While Dr. Toborowsky did make a statement that he believed some causal relationship existed between the accident and the psychological injury, his testimony clearly established that he believed it was Claimant's learning of being sued which triggered or stimulated Claimant's psychological injury. As stated by Dr. Toborowsky on cross-examination, although a car accident is usually not an extraordinary event, what made Claimant's accident extraordinary is the byproduct of the accident. In this case the byproduct, or the triggering event, of Claimant's psychological injury, was the lawsuit, not the accident itself. The accident itself was only indirectly causally related to Claimant's psychological injury since, without the accident, there would not have been the lawsuit to trigger or stimulate the psychological injury. Thus, the WCJ erred in finding of fact number 8 since there is not substantial evidence to support the finding that the work-related automobile accident itself triggered or stimulated Claimant's psychological injury.

Therefore, based on those findings of fact which are supported by substantial evidence, the evidence demonstrates that Claimant's psychological injury was triggered by the

other driver's lawsuit. Thus, we conclude that the Commonwealth Court and the WCJ erred as a matter of law in concluding that the evidence presented demonstrated the existence of a physical/mental injury for purposes of determining eligibility for reinstatement of workers' compensation benefits. We decline to find that learning of the filing of a lawsuit is a physical stimulus which could be the basis of a mental injury. Instead, we believe that, as a matter of law, the facts demonstrate that it was the psychological stimulus of learning that she was being sued as a result of the work-related accident, rather than the physical stimulus in the form of the injuries Claimant suffered from the work-related accident, which caused Claimant's psychological injury. Thus, Claimant's injury should have been classified as a mental/mental injury for purposes of determining Claimant's ability to have her Notice of Compensation Payable amended so that she could receive a reinstatement of workers' compensation benefits.

 Since Claimant's injury should have been classified as a mental/mental injury, the Court must now examine if Claimant presented sufficient evidence which would support a finding that Claimant suffered such an injury. In a mental/mental case, a claimant must not only prove that she has sustained an injury caused by her employment, but she must prove an abnormal working condition caused the psychological injury. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 519, 568 A.2d 159, 164–65 (1990). We find that Claimant fails under both prongs of her burden in a mental/mental compensation case.

Claimant first fails in proving that the psychological stimulus causing her psychological injury arose in the course of her employment. Here, the evidence shows that Claimant's psychological injury was triggered by the psychological stimulus of learning that she was being sued by the other driver involved in her work-related accident and not by the automobile accident itself. The automobile accident and the physical injuries suffered by Claimant have nothing more than a tangential or indirect relationship to causing Claimant's psychological injury, since it was the other driver's injuries from the

automobile accident which formed the basis of the other driver's lawsuit. As the Board aptly noted:

[w]hile the Claimant's physical injuries as a consequence of the automobile accident clearly arose in the course of her employment with the Defendant, it appears to this Board that alleged causal relationship between the mental illness and the car accident is tenuous at best.

Thus, we conclude that Claimant has failed to prove that her psychological injury was the product of a work-related injury. *See Hepp v. Workmen's Compensation Appeal Board (B.P. Oil Co.)*, 67 Pa. Commw. 330, 447 A.2d 337 (1982) (acute psychiatric episode occurring in employee's home following receipt of notice of discharge for fighting at work was not a work-related disability); *Thomas v. Workmen's Compensation Appeal Board (Atlantic Refining Co.)*, 55 Pa. Commw. 449, 423 A.2d 784 (1980) (claimant's nervous reaction to fire was not compensable since it was a non-work-related event).

Claimant also fails the abnormal working condition prong of her burden of proof. As this Court has stated:

[I]n a mental/mental case, work-related stress must be caused by actual objective abnormal working conditions, as opposed to subjective, perceived, or imagined employment events. For objective employment events to be considered abnormal, they must be considered in relation to the specific employment. Objective evidence which is corroborative of an employee's perception is necessary in determining the existence of abnormal working conditions. An employee's testimony alone on this issue is not sufficient.

*Volterano*, 536 Pa. at 345–46, 639 A.2d at 458 (citations omitted). Here, Claimant presented no such objective evidence of abnormal working conditions. Rather, the evidence demonstrates that claimant's psychological injury arose out of a subjective concern over a lawsuit filed by another party to the automobile accident. Thus, Claimant is unable to sustain her burden of proving the existence of abnormal working conditions. *See Wilson v. Workmen's Compensation Appeal Board (Aluminum Co. of America)*, 542 Pa. 614, 669 A.2d 338 (1996) (change of employment duties to "floater" position and

conditions in which work was performed did not constitute abnormal working conditions); *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa. Commw. 308, 595 A.2d 725 (1991), appeal denied, 532 Pa. 648, 614 A.2d 1144 (1992) (event causing psychological injury, death of co-worker who the claimant attempted to help, did not constitute an abnormal working condition).[9]

Therefore, for the reasons stated above, we find that the Commonwealth Court erred in analyzing Claimant's claim for reinstatement of benefits under the physical/mental burden of proof. Instead, Claimant's injury should have been examined under the mental/mental burden of proof. When examining the evidence of record, it is evident that Claimant failed to sustain the mental/mental burden of proof. Thus, the Commonwealth Court erred in concluding that the WCJ correctly ordered that Claimant's Notice of Compensation Payable be amended to reflect a physical/mental injury and that Claimant's workers' compensation benefits be reinstated. Accordingly, the order of the Commonwealth Court is reversed.

NIGRO, J., files a concurring opinion.

NIGRO, Justice, concurring.

I concur with the majority's holding that the Claimant's injury should have been classified as a mental/mental injury and that she has not met her burden of showing, sufficient for recovery, that those injuries result from abnormal working conditions.

Claimant did not report any psychological problems until almost two years following the automobile accident, and then not until she learned that she was being sued by the other driver. Thus, her condition is properly characterized as a mental disability resulting from a mental stimulus ("mental/mental"). Claimant's mental/mental injury is not compensable since she failed to prove the psychological stimulus occurred

9. Although this Court granted *allocatur* in order to address the standard of proof to be applied in cases involving physical/mental injuries, we must leave this issue for another day because as we have determined above, Claimant has not sustained a physical/mental injury.

as a result of abnormal working conditions in the course of her employment.

However, in determining compensability, I believe we must be vigilant in distinguishing those cases which may seem to be mental injuries brought on by mental stimuli (mental/mental) but are actually mental injuries caused by physical trauma. For example, I would categorize as physical/mental a latent psychological disorder, not immediately apparent, which is ultimately triggered by a mental stimulus, but nonetheless has its genesis in an original physical trauma. This mental disability may not surface until some time has passed and claimant inadvertently "revisits" the original physical trauma in her mind. Similarly, I would analyze as physical/mental a physical trauma simultaneously accompanied by psychological injury, which psychological injury may seem to heal but may actually recur when triggered by a mental stimulus associated with the original physical harm.

These delayed emotional reactions should not be mistaken as being unrelated to the physical harm when, in reality, the two are conjoined. Simply because the mental problem is "triggered" by a mental stimulus does not mean that it is not in fact caused by the physical injury. These examples represent classic patterns of emotional harm brought about by physical trauma ("physical/mental") and reflect the mind's ability not only to attempt to block a person's more horrible experiences, but to then flood with vivid memory on the slightest provocation. Both paradigms can produce debilitating psychological harm and are properly characterized as physical/mental injuries.