**NEW ENTERPRISE STONE & LIME CO., INC., and PMA Management Corporation, Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KALMANOWICZ), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 16, 2012.

Decided *Dec.* 6, 2012.

---

Jason K. Burns, Lemoyne, for petitioners.

Edwin A. Abrahamsen, Scranton, for respondent Anthony Kalmanowicz.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

New Enterprise Stone & Lime Co., Inc.[1] and PMA Management Corporation (collectively, Employer) petition this Court for review of the Workers' Compensation Appeal Board's (Board) July 10, 2012 order affirming the Workers' Compensation Judge's (WCJ) decision granting Anthony Kalmanowicz's (Claimant) claim petition. There is essentially one issue for this Court's review: whether the Board erred by determining that Claimant proved a physical/mental injury. We affirm.

Claimant was employed as a lowboy/equipment operator for Employer since April 2002. His duties included moving road construction equipment from job to job on a tractor trailer, and occasionally operating the equipment. On June 1, 2009 at 4:00 p.m., Claimant was operating a tractor attached to a trailer (known as a "lowboy") for Employer westbound on Route 6 in Wyalusing Township, Bradford County at approximately 55 miles per hour. While proceeding through a gradual turn, Claimant noticed a vehicle in the oncoming lane. The oncoming car's driver appeared to be putting something down or picking something up, then sat upright and veered into Claimant's lane. Claimant drove onto the shoulder up to the guardrail in order to avoid impact, but the vehicle struck his trailer head-on. The driver of the oncoming vehicle was pressing himself toward the windshield of his car and looking at Claimant when the vehicle and the tractor trailer collided.[2] The other driver died upon impact.

The collision forced Claimant's truck down an embankment and into some trees. After hearing people tell him to get out of

1. Prior to the filing of this appeal, Employer was known as Eastern Industries, Inc.

2. According to the police report which was included with the record, just moments before the accident, the deceased driver had delivered his house keys to his sister-in-law and told her he was on his way to the psych ward. He had also earlier that day texted seemingly suicidal messages to his wife.

the trailer before it caught fire, he slowly exited the trailer. Claimant refused medical treatment at the scene. After nearly four hours at the accident scene, Claimant was taken to the emergency room by Employer's secretary, Nikki Brewer, where he was examined. Claimant was diagnosed with left-sided chest wall and right wrist contusions and left shoulder tenderness/discomfort, and was released.

Claimant continued to work for Employer. As a result of the accident, Claimant's trailer was destroyed and, because Employer had no other truck for him to drive for nearly six weeks, he did not drive during that time. When Employer replaced the truck, Claimant resumed his pre-accident driving duties until December 2, 2009, when he experienced his normal winter lay-off period. In March 2010, Claimant began treatment for post-traumatic stress disorder (PTSD). He returned to work April 28, 2010 as a laborer at a lower hourly wage.[3]

Claimant filed a claim petition alleging that he sustained the PTSD as a result of the June 2009 work-related accident. Employer denied Claimant's allegations. Hearings were held before a WCJ on May 24, 2010, September 21, 2010, and May 10, 2011. In a decision issued October 13, 2011, the WCJ awarded Claimant benefits for physical/mental injury manifested as PTSD resulting from the "triggering physical event" of the June 1, 2009 accident. WCJ Op. at 5. By opinion issued July 10, 2012, the Board affirmed the WCJ's decision. Employer appealed to this Court.[4]

Employer argues that the Board erred by applying the standard for a physical/mental injury, as opposed to a mental/mental injury, and that Claimant failed to prove either. Employer specifically contends that a physical/mental injury cannot be established based upon fear of serious injury and knowing that someone died, but Claimant must also have suffered physical injuries that required medical treatment.

■■■ "In an original claim petition, as here, the claimant has the burden of proving all elements necessary to support an award." B & T Trucking v. Workers' Comp. Appeal Bd. (Paull), 815 A.2d 1167, 1170–71 (Pa.Cmwlth.2003). "This burden includes establishing a continuing loss of earning power caused by a work-related injury." Putz v. Workers' Comp. Appeal Bd. (Lupini Constr. Co.), 727 A.2d 1192, 1194 (Pa.Cmwlth.1999). "Disabilities caused by psychological/mental elements may be considered injuries which are compensable under the Workers' Compensation Act if all the elements needed to establish such a claim are present." Ryan v. Workman's Comp. Appeal Bd. (Cmty. Health Servs.), 550 Pa. 550, 557–58, 707 A.2d 1130, 1133 (1998); see also Section 301(c) of the Workers' Compensation Act.[5]

■■■ Psychological injuries fall into three categories: "(1) mental/physical—where a psychological stimulus causes physical injury; (2) physical/mental—where a physical stimulus causes a psychic injury; and (3) mental/mental—where a

---

3. Claimant's $19.77 hourly wage was reduced to $12.50 per hour.

4. "This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence." Washington v. Workers' Comp. Appeal Bd. (State Police), 11 A.3d 48, 54–55 n. 4 (Pa.Cmwlth.2011). Employer's application for supersedeas was denied on August 13, 2012.

5. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 411(1).

psychological stimulus causes a psychic injury. These categories require different standards of proof, the last being the most rigorous, requiring proof of abnormal working conditions." *Washington v. Workers' Comp. Appeal Bd. (State Police)*, 11 A.3d 48, 52 n. 2 (Pa.Cmwlth.2011) (quoting *City of Phila. v. Workmen's Comp. Appeal Bd. (Brasten)*, 682 A.2d 875, 878 n. 4 (Pa.Cmwlth.1996), *aff'd per curiam*, 556 Pa. 400, 728 A.2d 938 (1999) (citation omitted)). "Because psychological injuries are highly subjective, the occurrence of the injury and its cause must be adequately established." *Washington*, 11 A.3d at 55.

█ The issue here is whether Claimant proved a physical/mental injury.

To substantiate a physical/mental injury claim, the psychological injury must be the result of a triggering physical event and the injury must arise in the course of employment. If the casual [sic] relationship between the claimant's work and the injury is not clear, the claimant must provide unequivocal medical testimony to establish the necessary relationship.

*Bartholetti v. Workers' Comp. Appeal Bd. (School Dist. of Phila.)*, 927 A.2d 743, 746 (Pa.Cmwlth.2007) (citation and footnote omitted). "Unequivocal medical testimony is a medical expert's testimony that in his professional opinion the claimant's condition ... did [in fact] come from the work experience." *Id.* at 746 n. 7 (quotation marks omitted).

█ According to the record, Claimant never suffered from or treated for any mental conditions prior to June 1, 2009. Claimant testified that, during the accident, the other driver "had his hands on the steering wheel with his face pressed up against the windshield looking directly into my face at the point of impact. And I can't get that out of my head. I just can't." Reproduced Record (R.R.) at 217a.

Based upon his observation of the other driver, Claimant said "he knew exactly what he was doing.... The more I veered off the road the more he came at me." R.R. at 218a–219a. Claimant also stated that he thought the driver resembled him. Claimant indicated that, as he went over the embankment after impact, "the trees are coming off the windshield. I was waiting for a tree to come through the windshield and kill me." R.R. at 218a. When he was in the hospital approximately four hours later, he described being "in disbelief. I was horrified over the situation...." R.R. at 225a.

Claimant reported that, during the six weeks following the accident, Employer directed him to return and help clean up the accident scene. He also stated that he had difficulty sleeping due to restlessness. He testified that he experienced nightmares in which he did not survive the accident. When he picked up his new tractor, he "was upset," and experienced clammy hands, uneasiness and sweating. R.R. at 227a. Claimant testified that on one trip, approximately eight weeks after the accident, somebody crossed the yellow line, and he "lost it"; he started sweating and shaking so badly he had to pull over. R.R. at 228a. He reported that incident to Ms. Brewer. Claimant indicated that his fear worsened to the point that he is now afraid to drive because of oncoming traffic, and he can no longer control a truck.

In late January or early February 2010, during his lay-off, Claimant and his wife were returning from a trip when he rounded a turn and an oncoming driver veered into his lane. Although he admitted having plenty of time to stop or avoid the accident, he drove off into a cornfield "without realizing it." R.R. at 237a. As a result of that incident, he understood the extent of his problem, and contacted Ms. Brewer about a compensation claim. In

addition, in January 2010, Claimant testified that he had a work evaluation, during which he told his supervisor, Bill Faux, that he did not want to drive any more.

Claimant testified that when he was recalled from his lay-off in April 2010, he returned as a laborer. Claimant stated that, while working as a flagger, the traffic scared him because he did not know what drivers were going to do. His fear led him to back off the road to avoid a driver and, in the process, twist his knee. Thereafter, it was suggested that he work in Employer's quarry.[6] The WCJ deemed Claimant's testimony credible and persuasive.

After making his claim, Claimant treated with one of Employer's panel physicians, and his family physician, Christopher Andres, M.D., who prescribed medication for his anxiety. Claimant's counsel had him evaluated by psychiatrist, Richard E. Fischbein, M.D. Claimant met with Dr. Fischbein on March 1, 2010, March 22, 2010 and April 20, 2010. As a result of those meetings and his review of Claimant's records, including the police report, Dr. Fischbein opined, with a reasonable degree of medical certainty that Claimant suffers from severe PTSD resulting from the June 1, 2009 accident. He testified that what appeared to have been a delayed onset was not uncommon for such a diagnosis and that Claimant, like many others with the disorder, tend to "macho" their way through their initial symptoms. Dr. Fischbein concluded that although Claimant was capable of physically performing laborer jobs, his condition makes him incapable of performing jobs that place him in proximity to trucks and vehicular traffic. He recommended that Claimant seek therapy with psychologist, Michael

Church. Claimant continues to treat with Dr. Church, and is making slow progress. Dr. Fischbein opined that Claimant would never fully recover. The WCJ deemed credible Dr. Fischbein's unrebutted and corroborated testimony that Claimant suffers PTSD related to the June 1, 2009 accident.

On May 10, 2010, Employer notified Claimant that, according to Dr. Zurad and Christopher Andres, M.D., "there are no medical conditions precluding [him] from performing duties other than those of a tractor trailer driver," and confirming alternate positions offered to him by Mr. Faux. R.R. at 125a. However, on October 26, 2010, Claimant underwent an independent psychiatric evaluation at Employer's request with psychiatrist, Robert Cohn, M.D. Following his review of the police report, Claimant's medical records and therapy notes, and after meeting with Claimant, Dr. Cohn concluded that Claimant suffers PTSD related to the June 1, 2009 accident. He acknowledged that Claimant had responded to his treatment, but there was room for further improvement.

■ The WCJ found that "the collision between [C]laimant's truck and decedent's automobile constitutes 'a triggering physical event.'" R.R. at 17a. "The WCJ is the sole finder of fact when the Board takes no additional evidence. A WCJ's findings of fact can be reversed only if not supported by substantial, competent evidence or if arbitrary and capricious." *B & T Trucking*, 815 A.2d at 1170 (citation omitted). "'Substantial evidence' is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. In performing a substantial evidence analysis,

---

**6.** The quarry job paid higher than the laborer position, but still less than Claimant's pre- injury wage.

the evidence must be viewed in a light most favorable to the party who prevailed before the WCJ." *Washington,* 11 A.3d at 54–55 n. 4 (citations omitted).

A WCJ is free to accept or reject ... the testimony of ... medical witnesses. The Board may review the nature of the evidence submitted to determine if it is sufficient to state a claim, however reinterpretation of the evidence by the Board is in excess of its scope of review.

*Bartholetti,* 927 A.2d at 747 (citation omitted). Here, there was substantial evidence to support the WCJ's conclusion that Claimant suffered PTSD as a result of the work-related accident. We must now determine whether the facts support the WCJ's conclusion that Claimant proved a physical/mental injury.

■ This Court has long held:

A claimant need not prove that he or she suffered a physical *disability* that caused a mental disability for which he or she may receive benefits. Nor must a claimant show that the physical injury continues during the life of the psychic disability. Rather, a claimant need only show that a physical *stimulus* resulted in a mental disability.

*Donovan v. Workers' Comp. Appeal Bd. (Acad. Med. Realty),* 739 A.2d 1156, 1161 (Pa.Cmwlth.1999). Moreover, "[a] claimant alleging a psychological injury stemming from a physical injury is not required to show abnormal working conditions." *Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post Gazette),* 954 A.2d 726, 728 (Pa.Cmwlth.2008).

It is clear in this case that Claimant suffered a significant physical stimulus in the form of the head-on collision causing the death of the other driver before Claimant's eyes, and disabling his loaded tractor-trailer causing it to descend an embankment. Claimant's intimate involvement in the fatal accident is sufficient to constitute a "physical stimulus" to support a compensation award.

Based upon our review of the record and interpretation of the law, we hold that the physical/mental analysis was properly applied and was supported by substantial evidence. Thus, the Board did not err by affirming the WCJ's decision that Claimant proved a physical/mental injury.

■ Next, we address Employer's contention that the mental/mental standard should have been applied. In order to prove a mental/mental injury, this Court has held:

Where ... the alleged psychological injury was not precipitated by physical injury, the claimant must establish by objective evidence that he suffered a psychological injury and that the injury was more than a subjective reaction to normal working conditions. [E]ven if a claimant adequately identifies actual (not merely perceived or imagined) employment events which have precipitated psychiatric injury, the claimant must still prove the events to be abnormal before he can recover.

*Washington,* 11 A.3d at 55 (citations and quotation marks omitted). Examples of compensable mental/mental injuries include: Aggravation of pre-existing PTSD due to repeated, crude sexual comments by co-workers (*RAG (Cyprus) Emerald Resources, L.P. v. Workers' Comp. Appeal Bd. (Hopton),* 590 Pa. 413, 912 A.2d 1278 (2007)); PTSD resulting from nearly being run over by machinery (*Monessen v. Workmen's Comp. Appeal Bd. (Marsh),* 158 Pa.Cmwlth. 502, 631 A.2d 1119 (1993)); Schizophrenia due to the stress of being a police officer (*Leo v. Workmen's Comp. Appeal Bd. (Borough of Charleroi),* 114 Pa.Cmwlth. 6, 537 A.2d 399 (1988)); and Panic disorders due to supervisor harassment (*McDonough v. Workmen's Comp.*

*Appeal Bd. (Com., Dep't of Transp.)*, 80 Pa.Cmwlth. 1, 470 A.2d 1099 (1984)). In such cases, the psychological injury was not caused by a physical stimulus or triggering physical event. Accordingly, the Board did not err in concluding that the mental/mental analysis is not the applicable standard in this case.

For all of the above reasons, the Board's order is affirmed.

## ORDER

AND NOW, this 6th day of December, 2012, the Workers' Compensation Appeal Board's July 10, 2012 order is affirmed.