728 A.2d 902

**COMMERCIAL CREDIT CLAIMS, Appellant,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (LANCASTER), Appellee.**

Supreme Court of Pennsylvania.

Argued March 9, 1998.

Decided March 26, 1999.

---

Fred C. Trenor, Miles D. Kirshner, Pittsburgh, for Commercial Credit.

Anthony Kovach, Lancaster, for appellees.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

■ This Court granted review in order to decide whether an employer seeking to terminate a claimant's workers' compensation benefits must disprove a causal relationship between the work-related injury and a subsequently alleged psychiatric injury where the employer accepted liability in the Notice of Compensation Payable only for the physical injuries suffered from the work-related accident. We find that in these circumstances, the employee, not the employer, shoulders the burden of establishing a causal relationship between the work-related injury and a subsequently alleged psychiatric injury. Accordingly, we reverse the Order of the Commonwealth Court.

On July 28, 1983, appellee John Lancaster ("claimant") fell approximately twenty-eight feet from a catwalk while taking photographs in the course of his employment as a claims adjuster for appellant Commercial Credit Claims ("employer" or "appellant"). On December 22, 1983, employer and its insurance carrier issued a Notice of Compensation Payable (NCP) voluntarily accepting liability for physical injuries described as "cervical syndrome, sprain[ed] right sternoclavicular joint," and agreed to pay claimant total disability benefits at the rate of $ 205.33 per week based on claimant's weekly wage of $ 308.00 per week.

On July 7, 1986, employer filed a petition to terminate claimant's benefits alleging that as of April 28, 1986, claimant had fully recovered from the work-related injury for which employer had accepted liability. At subsequent hearings on this petition, claimant testified in his own behalf as to his

ongoing pain. Employer presented the expert deposition testimony of James P. Valeriano, M.D., a board-certified neurologist. Dr. Valeriano testified that he had examined claimant twice. When asked if the physical symptoms of which claimant complained were causally related to the injuries sustained in 1983, Dr. Valeriano responded, "I don't think they physically could have caused the problems he had." Instead, Dr. Valeriano testified that "the main component of claimant's problem was a psychiatric problem," and that he could not ascertain any physical cause for the pain of which claimant complained. When asked if the psychological component was itself related to the 1983 accident, Dr. Valeriano responded that "there is almost no way that I can say that because I didn't know him before."

In 1995,[1] the Workers' Compensation Judge (WCJ) issued an opinion in which he found both claimant and Dr. Valeriano to be credible and in which he denied employer's termination petition. In doing so, the WCJ made the following finding of fact:

> While it is true that Dr. Valeriano never stated to a degree of medical certainty that claimant's disabling psychiatric condition was related to his July 28, 1983 work-related injury, he certainly did not rule out the nexus between the claimant's work injury and the disabling condition.

WCJ Opin. at 5, Finding of Fact No. 6. Based upon this finding of fact, the WCJ concluded as a legal matter that:

> When the [employer's] medical witness himself raises the possibility that claimant was suffering from a psychological disability caused by the work injury, that physician's testimony cannot be be (sic) found to be unequivocal with regard to full and complete recovery.

*Id.* at 6, Conclusion of Law No. 2. Accordingly, the WCJ denied employer's termination petition. On appeal, the Workmen's Compensation Appeal Board affirmed the WCJ. The Commonwealth Court affirmed the Board in an unpublished

---

1. The referee had issued an Order granting an indefinite postponement in 1989 due to claimant's illness.

opinion. Subsequently, this Court granted allocatur. *Commercial Credit Claims v. WCAB*, 549 Pa. 719, 701 A.2d 579 (1997).

■ Appellate review of a workers' compensation order is limited to determining whether the lower tribunals committed a constitutional violation or an error of law and whether substantial evidence supports the necessary findings of fact. *Ryan v. WCAB*, 550 Pa. 550, 557, 707 A.2d 1130, 1133 (1998) (citing *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 31, 584 A.2d 301, 303 (1990)). Appellant contends that the lower tribunals committed an error of law by holding that an employer seeking to terminate a claimant's workers' compensation benefits must disprove a causal relationship between the work-related injury and a subsequently alleged psychiatric injury even if the employer accepted liability in the Notice of Compensation Payable only for the physical injuries suffered from the work-related accident. We agree.

The Workmen's Compensation Act, 77 P.S. §§ 1 *et seq.*, provides:

> **§ 717.1. Prompt payment of compensation; Interest; credit for excess payment; controversion**
>
> The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in [§ 731] ... Payments of compensation pursuant to an agreement or notice of compensation payable may be suspended, terminated, reduced or otherwise modified by petition and subject to right of hearing as provided in [§§ 771 to 774.1].

Here, the employer, as required by § 717.1, promptly proceeded to commence the payment of compensation "pursuant to a ... notice of compensation payable as provided in [§ 731]." Section 731 of the Act states in relevant part:

> ... All notices of compensation payable and agreements for compensation and all supplemental agreements for the mod-

ification, suspension, reinstatement, or termination thereof ... shall be valid and binding unless modified or set aside as hereinafter provided.

Accordingly, the Notice of Compensation Payable, which set forth the terms for the payment of compensation by employer to claimant and described the nature of the injury which served as the predicate for that compensation, was "valid and binding unless modified or set aside" in the manner provided by the Act.[2] The relevant modification procedures under the Act are set forth at §§ 771–772, and provide as follows:

**§ 771. Review and modification or setting aside of notice of compensation payable or agreement incorrect in material respect**

A referee of the department may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such referee, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

**§ 772. Modification, etc., of notice of compensation available, agreement or award on change in disability of injured person; exception as to eye injuries**

A referee designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its referee, upon petition filed

---

2. Claimant could have contested the terms of the original Notice of Compensation Payable pursuant to 77 P.S. § 751, which provides:

   **§ 751. Presentation of claim petition upon failure to agree; payments when issue of accident and injury not denied or resolved.** If, after any injury, the employer or his insurer and the employee or his dependent, concerned in any injury, shall fail to agree upon the facts thereof or the compensation due under this act, the employee or his dependents may present a claim petition for compensation to the department.

   Because claimant did not "present a claim petition" based on his "fail[ure] to agree upon the facts" as set forth in the original Notice of Compensation Payable, the original Notice is "valid and binding" pursuant to section 731.

by either party with the department, upon proof that the disability of the injured employee has increased, decreased, recurred, . . . .

In the matter *sub judice,* the Notice of Compensation Payable required employer to compensate claimant only to the extent that he was unable to work due to physical injuries classified as "cervical syndrome, sprain[ed] right sternoclavicular joint." Indeed, employer could not have accepted responsibility for claimant's psychiatric injury in the Notice of Compensation Payable, since there was no evidence that claimant was disabled from a psychiatric standpoint at the time that this Notice was executed. Accordingly, claimant's subsequently alleged psychiatric injuries could have formed the predicate for compensation under the Act only if the Notice of Compensation Payable was first properly modified, in accordance with §§ 771 and 772, *supra,* to reflect the employer's increased liability for these distinct injuries. Sections 771 and 772 establish that an employer's liability, as set forth in the Notice of Compensation Payable, may be so modified only "if it be *proved* " that the original Notice "was in any material respect incorrect," [3] or "*upon proof* that the disability of the injured employee has increased, decreased, [etc.]," pursuant to a "petition filed by either party with the department" (emphasis added).[4] Thus, the statute allows either party to file a petition with the department seeking a modification of the original Notice of Compensation Payable, and by clear implication requires the moving party to meet the burden of *proving* the grounds for the modification.

Here, because claimant never sought to modify the terms of the Notice of Compensation Payable to include compensation for his mental injuries, employer needed to show only that claimant's physical injuries had been resolved in order to succeed on its termination petition. *See Pieper v. Ametek–Thermox Instruments Div.,* 526 Pa. 25, 32, 584 A.2d 301, 304 (1990) (if the evidence submitted by the employer

3. *See* § 771, *supra.*

4. *See* § 772, *supra.*

sufficiently establishes a 'termination of liability' with regard to the injury for which employer initially accepted liability, then the claimant must establish a causal connection between his current condition and the prior work-related injury in order to have benefits reinstated). Employer had no burden to disprove a causal relationship between the work-related injury and a subsequently alleged psychiatric injury where the Notice of Compensation Payable set forth liability only for the physical injuries suffered from the work-related accident. Consequently, since the terms of the original Notice of Compensation Payable are "valid and binding unless modified or set aside," 77 P.S. § 731, *supra*, and since claimant did not attempt to modify the terms of the original Notice of Compensation Payable in accordance with §§ 771–772, the lower tribunals erred by failing to confine their analysis of employer's termination petition to whether the injuries set forth in the original Notice of Compensation Payable had been resolved. Since the uncontested expert testimony of Dr. Valeriano, as credited by the WCJ, established that these physical injuries had indeed been resolved, the Petition to Terminate Benefits should have been granted.

Although the conclusion that we reach today is plainly dictated by the relevant statutory provisions, we note also that sound considerations of policy militate heavily in favor of this conclusion. To impose a burden on an employer to "prove a negative" by establishing that the subsequently alleged psychiatric injury bore no causal relationship to the work-related accident would be fundamentally unfair. Regardless of whether the employer had notice of the purported psychiatric injury at the time that the Notice of Compensation Payable was executed, and regardless of how much time elapsed before the psychiatric injury arguably manifested itself, the employer would have to prove the absence of any causal relationship between the psychiatric injury and the work-related accident. We will not strain the humanitarian goals underlying the Workmen's Compensation Act by holding that employees may remain perpetually eligible for compensation merely by alleging psychiatric injury at the eleventh hour and waiting to see

whether the employer can adduce the requisite expert testimony to disprove a causal nexus.[5]

The Court's decision in this matter does not leave claimant without recourse. Claimant may still file a Petition for Review seeking to amend the original Notice of Compensation Payable by meeting his burden of proving that he suffered a work-related mental disability as a result of the work-related physical injury for which employer accepted liability. *See Ryan v. WCAB*, 550 Pa. at 553–55, 707 A.2d at 1131–32 (claimant had executed final receipt for her workers' compensation benefits but subsequently filed petition seeking to amend original Notice of Compensation Payable to reflect her ongoing mental disability stemming from her original work-related physical injury). However, claimant may not shift the burden which he properly bears to an employer merely by contesting the employer's termination petition.

In sum, the lower tribunals erred by declining to grant employer's termination petition, since the uncontradicted expert testimony established that the injuries which formed the predicate for compensation had been resolved,[6] and since

5. The conclusion that we reach here is consistent with this Court's decision in *Gumro v. WCAB*, 533 Pa. 461, 626 A.2d 94 (1993). In *Gumro*, the claimant injured himself when he stepped in a hole at the employer's coal mine and twisted his left knee. The claimant underwent successful arthroscopic surgery to repair the torn cartilage in the knee. However, the claimant subsequently developed pain and swelling in his left leg, attributable to "deep venous thrombosis" or a blood clot. This Court relied on *Beissel v. WCAB*, 502 Pa. 178, 182, 465 A.2d 969, 971 (1983), in concluding that the employer bears the burden of proving that an independent cause of an employee's disability arose after the filing of a notice of compensation payable if the employer is seeking to justify the termination of benefits on the grounds that the employee's disability is no longer work-related. It is important to emphasize that the injuries at issue in *Gumro* were of a very similar *physical* nature. However, in the matter *sub judice*, the injury for which the employee sought benefits was an injury which plainly fell outside the scope of liability to which the employer had stipulated in the Notice of Compensation Payable because it was an entirely different type of injury, distinct in kind from the injury described in the Notice of Compensation Payable. In *Gumro*, the injury at issue was not distinct in kind, if indeed it was distinct at all, from the injury for which the employer had accepted liability in the Notice of Compensation Payable.

6. The dissent would remand this matter for "a determination as to whether the original physical injury as described in the Notice of

claimant failed to establish an entitlement to compensation based on his subsequently alleged psychiatric injuries. Accordingly, the Order of the Commonwealth Court is reversed, and employer's termination petition is granted.

Justice CAPPY concurs in the result.

Justice NIGRO files a concurring and dissenting opinion.

NIGRO, Justice, concurring and dissenting.

I join in the majority's determination that in its termination petition Employer did not have the burden to disprove a causal relationship between the work-related injury and the subsequent psychiatric injury. I dissent, however, from the majority's granting of the termination petition on this basis.

Rather, I believe that this case should have been remanded to the Workers' Compensation Judge for a determination as to whether the original physical injury as described in the Notice of Compensation Payable is still operative without reference to any psychological overlay, and whether, as a result, Claimant is still disabled.

In order to terminate benefits, the employer must establish that all disability related to a compensable injury has ceased. *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990). Where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonably degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions, and there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury.

Compensation Payable is still operative without reference to any psychological overlay...." However, as stated above (Op. at 903), this determination has already been made. Dr. Valeriano, in uncontradicted expert testimony, testified that he could not ascertain any physical cause for the pain of which claimant complained and that the main component of claimant's problem was psychiatric. Consequently, we believe that employer met its burden of demonstrating that claimant's physical injuries subsided. Thus, after almost thirteen years of litigation over this termination petition, we determine that closure is both appropriate and necessary based on the facts of record.

*Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.),* 550 Pa. 319, 327, 705 A.2d 1290, 1293 (1997).

Here, the record shows that the WCJ found credible both the testimony of Claimant and the testimony of Employer's medical witness. With regard to Claimant's physical injury, Employer's medical witness testified that Claimant suffers from "a fair amount of pain generated from [Claimant's] accident" and the development of "a chronic pain syndrome." Furthermore, Employer's medical witness admitted to having only "inconsistent" objective diagnostic data from his physical examination of Claimant because of his severe bodily tremors. Therefore, the WCJ's decision was inconclusive as to whether Employer met its burden to prove that all disability from a work-related physical injury has ceased.

Since the record is inclusive and does not show whether Employer's medical witness met this burden, I would, therefore, remand this case to the WCJ for a determination as to whether Claimant has recovered from his original physical disability.